**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **BRIVO, INC.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**KASTLE SYSTEMS INTERNATIONAL LLC, KASTLE SYSTEMS LLC, AND KASTLE SYSTEMS OF TEXAS LLC,**<br><br>**Defendants.** | **Civil Action No.**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff Brivo, Inc. ("Brivo" or "Plaintiff") files this Original Complaint against Defendants Kastle Systems International LLC, Kastle Systems LLC, and Kastle Systems of Texas LLC (collectively, "Kastle Systems" or "Kastle" or "Defendants") and alleges as follows:

## NATURE OF ACTION

1. Kastle has infringed and continues to infringe at least one claim of U.S. Patent No. 12,367,680 ("the '680 Patent" or the "Asserted Patent").

2. Kastle infringes directly, literally and/or under the doctrine of equivalents, contributes to the infringement of, and/or induces infringement of the Asserted Patent by making, using, selling, offering for sale, and/or importing into the United States its integrated access control and video surveillance products and services, including, but not limited to Kastle Access, KastleVideo, KastleVideo Search, Kastle's intelligent video analytics and facial recognition features, the myKastle interface, and Kastle's managed security and monitoring services, including its Video Operations Center (collectively, the "Accused Products").

## PARTIES

3. Plaintiff Brivo, Inc. is a corporation organized under the laws of the State of Delaware with established places of business at 7700 Old Georgetown Road, Suite 300, Bethesda, MD 20814 and 3001 Bee Caves Rd., Austin, TX 78746.

4. On information and belief, Defendants Kastle Systems International LLC, Kastle Systems LLC, and Kastle Systems of Texas LLC are limited liability companies organized under the laws of the Commonwealth of Virginia with a shared principal place of business at 6402 Arlington Boulevard, Falls Church, Virginia 22042.

5. On information and belief, Kastle Systems International LLC is the parent entity of Kastle Systems LLC and Kastle Systems of Texas LLC.

6. On information and belief, Kastle designs, makes, sells and/or leases, offers to sell and/or lease, installs, monitors, maintains, and supports physical access control and video surveillance systems for customers throughout the United States, and maintains "installation and service teams in major markets across the United States." Kastle, *About*, https://www.kastle.com/about/.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over the patent infringement claims asserted in this case under 28 U.S.C. §§ 1331 and 1338.

8. This Court has personal jurisdiction over each of Kastle Systems International LLC, Kastle Systems LLC, and Kastle Systems of Texas LLC. On information and belief, each Defendant is organized under the laws of the Commonwealth of Virginia, maintains its principal place of business in this District, maintains a regular and established place of business in this District, and has committed acts of infringement in the Commonwealth of Virginia and this

District, individually and collectively as Kastle. To the extent relevant, each Defendant has also purposefully availed itself of the privilege of conducting business in this forum such that the exercise of jurisdiction comports with due process.

9. Venue is proper in this Court as to each Defendant pursuant to 28 U.S.C. § 1400(b) because each of Kastle Systems International LLC, Kastle Systems LLC, and Kastle Systems of Texas LLC resides in this District, and because each Defendant has committed, and continues to commit, acts of infringement in this District and has a regular and established place of business in this District.

10. On information and belief, Kastle Systems International LLC, Kastle Systems LLC, and Kastle Systems of Texas LLC each maintain a regular and established place of business in this District at their shared principal place of business, 6402 Arlington Blvd., Falls Church, Virginia 22042.

11. On information and belief, Kastle Systems International LLC directs from this District the business, products, and services that Defendants market under the Kastle brand, including the Accused Products. Kastle Systems LLC provides managed security services, including the Accused Products, from this District, including to federal government customers. Kastle Systems of Texas LLC, although it serves customers in Texas, is organized under Virginia law and is managed and directed from its principal place of business in this District, where, on information and belief, decisions about the Accused Products it installs, maintains, and services are made.

12. On information and belief, Kastle markets, advertises, develops, sells, and implements the Accused Products in the Eastern District of Virginia.[1]

---

[1] *Top-Rated Commercial Security System Installers*, Kastle Sys., https://www.kastle.com/offices.

13. On information and belief, Kastle owns and operates sales and marketing websites that advertise and promote the Accused Products to customers in the United States, and in this District.

14. On information and belief, Kastle regularly conducts business within the Eastern District of Virginia. For example, Kastle employees within the Eastern District of Virginia manage the deployment of Kastle Access at client sites, maintain and monitor Kastle Access systems, and perform 24/7 live-event monitoring from Kastle's Video Operations Center.[2]

15. On information and belief, Kastle employs numerous individuals within the Eastern District of Virginia whose work relates to the Accused Products, including at least Installation and Service Technicians, Customer Service Representatives, Business Development Representatives, the Chief Executive Officer, the Chief Product Officer, and the Chief Financial Officer.[3]

16. On information and belief, Kastle has created a sales and distribution system comprising substantial resources within the Eastern District of Virginia. Through this distribution system, Kastle introduces infringing products and services into the stream of commerce with the knowledge, expectation, and intent that they will be sold and used in the United States, including in the Commonwealth of Virginia and in this District.

---

[2] *See Installation Technician in Falls Church, Virginia*, Kastle Sys., https://careers.kastle.com/careers-home/jobs/5234?lang=en-us; *Service Technician II in Falls Church, Virginia*, Kastle Sys., https://careers.kastle.com/careers-home/jobs/5339?lang=en-us; *Customer Service Representative I in Multiple Locations*, Kastle Sys., https://careers.kastle.com/careers-home/jobs/5281?lang=en-us.

[3] *See Haniel Lynn*, LinkedIn, https://www.linkedin.com/in/haniel-lynn-99525 (identifying Haniel Lynn as Kastle's Chief Executive Officer); *Todd Burner*, LinkedIn, https://www.linkedin.com/in/toddburner (identifying Todd Burner as Kastle's Chief Product Officer, located in Arlington, Virginia); *Ralph Masino*, LinkedIn, https://www.linkedin.com/in/ralph-masino-2a96225 (identifying Ralph Masino as Kastle's Chief Financial Officer, located in Great Falls, Virginia); *John Pineda*, LinkedIn, https://www.linkedin.com/in/john-pineda-881471170 (identifying John Pineda as a Kastle Business Development Representative, located in Arlington, Virginia).

17. On information and belief, Kastle's customers use the Accused Products within the Eastern District of Virginia.

## BACKGROUND

### A. Access Control Systems

18. Businesses, property owners, and other organizations use physical access control systems to control who may enter their buildings and the spaces within them. These systems issue authorized users electronic credentials, such as key cards, fobs, or mobile credentials, which must be presented to a reader at a controlled door before the door will unlock.

19. Historically, access control and video surveillance operated as separate systems. A credential reader could confirm that a valid credential had been presented, but determining whether the person presenting it was the person to whom it had been issued required security personnel to review video separately.

20. Managing physical security across many doors, buildings, and locations is a complex task. Organizations must keep credentials, permissions, and schedules current for large and changing populations of users, review large volumes of video, and respond to access events as they occur.

### B. Brivo

21. Brivo is at the forefront of access control system technology. Founded in 1999, Brivo pioneered cloud-based access control, introducing one of the first cloud-based, software-as-a-service access control systems in the early 2000s.[4] Brivo's founder and president, Steven

[4] *See* Brivo Systems, *Brivo Systems Celebrates 15 Years of Service and Innovation*, Retail IT Insights (May 29, 2014), https://www.retailitinsights.com/doc/brivo-systems-celebrates-years-of-service-and-innovation-0001.

Van Till, has been recognized throughout the security industry for this work, including through his induction into the Security Sales & Integration Industry Hall of Fame in 2019.[5]

22. Brivo has continued to innovate, including by unifying access control and video surveillance technology. In 2021, for example, Brivo launched Brivo Snapshot, "a high-accuracy video analytics and forensic tool that uses machine learning" and draws on the "fusion of access control and video data streams."[6] Brivo Snapshot identifies "the video frame with the highest facial detection score around a specific event" to create "an access-indexed video stream."[7] Today, Brivo's flagship product, Brivo Security Suite, "unifies access control, video intelligence, visitor management, and intrusion into a single view to centralize security across the enterprise."[8] In 2025, Brivo merged with Eagle Eye Networks to form the industry's largest AI cloud-native physical security company, with the merged enterprise operating under the Brivo name.[9]

23. Brivo invests heavily in the research and development of technological innovations in physical access control and video surveillance systems. Brivo's intellectual property portfolio reflects some of the ways in which Brivo has propelled the industry forward. That portfolio includes the Asserted Patent, which names Mr. Van Till as an inventor. Brivo's innovative

---

[5] *See* Scott Goldfine, *Introducing the SSI Industry Hall of Fame Class of 2019*, Security Sales and Integration, https://www.securitysales.com/business/ssi-industry-hall-fame-2019/6/.

[6] Brivo, *Brivo's AI-powered Snapshot Launched to Provide Rapid Insights into Fusion of Access and Video Data* (June 30, 2021), https://www.brivo.com/brivos-ai-powered-snapshot-launched-to-provide-rapid-insights-into-fusion-of-access-and-video-data/.

[7] *Id.*

[8] Brivo, *Brivo Unveils AI Agent-Friendly API*, Business Wire (May 14, 2026), https://www.businesswire.com/news/home/20260514005426/en/Brivo-Unveils-AI-Agent-Friendly-API.

[9] Brivo, *Brivo and Eagle Eye Networks Merge to Form the Industry's Largest AI Cloud-native Physical Security Company* (Dec. 29, 2025), https://www.brivo.com/newsroom/brivo-and-eagle-eye-networks-merge/.

technologies are trusted by more than 25 million users, with more than 2 million devices deployed across more than 100,000 locations in 80 countries.[10]

**C. <u>Kastle Systems</u>**

24. Kastle Systems International LLC is the parent of the other Kastle entities. It directs the business, products, and services that Defendants market under the "Kastle" brand. It provides managed access control, video surveillance, visitor management, and identity management services to commercial real estate, multifamily residential, enterprise, educational, and government customers.

25. Kastle Systems LLC provides managed security services to customers, including as a federal contractor providing access control systems to the government.[11] Kastle Systems LLC has received federal contract awards since at least 2001 across several federal agencies and departments.[12]

26. Kastle Systems of Texas LLC provides managed security services to customers in Texas. On information and belief, it has employees in Houston and Dallas who install, maintain, and service security systems for Texas customers.

27. Kastle makes, uses, sells, offers for sale, and/or imports products and services related to physical access control and video surveillance that infringe at least one claim of the Asserted Patent.

28. For example, on information and belief, Kastle makes, installs, uses, sells, and/or offers for sale its Kastle Access physical access control system integrated with its KastleVideo

---

[10] *See Brivo Unveils AI Agent-Friendly API*, *supra* note 8.

[11] PrimeRFP, *Profile: Kastle Systems*, https://primerfp.com/intel/company/kastle-systems-llc.

[12] GovTribe, *Vendors: Kastle Systems LLC*, https://govtribe.com/vendors/kastle-systems-llc-9m714#unlock-heading.

video surveillance platform, including KastleVideo Search, Kastle's intelligent video analytics and facial recognition features, and the myKastle interface. Kastle markets this offering as "Integrated Access + Video" that allows users to "[c]onnect the dots between the door, credential and the visual verification you need all in one place."[13]

29. KastleVideo Search includes an "Access Event Search" feature that allows users to "[s]earch by credential number, credential holder, access time or event with Kastle Access access integration" and to "[i]nstantly tie video to specific access event."[14] KastleVideo Search also allows users to "[c]ombine appearance, motion, access events, or object type in the same search," and to "[t]ake a snapshot from any event clips" and find matches "across your entire camera network."[15] Kastle advises customers to "[p]lace cameras on readers at these key doors, then expand coverage outward," and to "[t]ie it all back to access logs for a searchable, reliable record."[16]

30. Kastle's intelligent video analytics include facial recognition. Kastle states: "We anonymize facial images into over 30 features and match them against enrolled templates instantly."[17] Kastle further states that its "[b]ackend AI can be updated regularly to adapt to new

---

[13] Kastle, *User-Friendly Interface*, https://www.kastle.com/solutions/video-surveillance/user-friendly-interface/.

[14] Kastle, *KastleVideo Search*, https://www.kastle.com/resource/kastlevideo-search/.

[15] *Id.*

[16] Kastle, *Apartment Security: Access Control and Cloud Video Guide*, https://www.kastle.com/resource/apartment-security-access-control-cloud-video-guide/.

[17] Kastle, *Intelligent Video Analytics*, https://www.kastle.com/solutions/video-surveillance/intelligent-video-analytics/.

threat profiles or investigative techniques without replacing physical hardware."[18] The ExpressHD recorder used within the KastleVideo platform generates a "10-second video clip . . . upon trigger of alarm," which "contains 2-4 seconds of pre-alarm video."[19]

31. Kastle Access applies "access privileges that can be tailored according to occupant ID, time and space" and allows users to "remotely deactivate and lock/unlock entrances."[20] Through Kastle's cloud-based solutions, customers can "see who's in your space, lock or unlock doors, grant access, set schedules and comprehensively manage your facilities."[21]

32. Kastle provides the Accused Products as a managed service. KastleVideo Search is "[p]owered by Kastle's 24/7 Security Backbone," including "Kastle's powerhouse Video Operations Center and Kastle VideoGuarding® monitoring service." Kastle, *KastleVideo Search*, *supra* note 14. On information and belief, Kastle designs, installs, configures, maintains, and monitors the Accused Products at customer sites throughout the United States, including in this District.

**THE '680 PATENT**

33. On July 22, 2025, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,367,680, entitled "Single Credential Admittance Applied to a Plurality of Individuals by Video Image Transformation System and Method of Operation," naming Steven

---

[18] Kastle, *Seeing Beyond the Lens: Why AI-Powered Video Footage Analysis Outpaces In-Camera Intelligence*, https://www.kastle.com/resource/seeing-beyond-the-lens-why-ai-powered-video-footage-analysis-outpaces-in-camera-intelligence/.

[19] Kastle, *ExpressHD*, https://www.kastle.com/wp-content/uploads/2025/02/Kastle_ExpressHD_1-13-25.pdf.

[20] Kastle, *The Building You Need*, https://www.kastle.com/wp-content/uploads/2024/01/Kastle_BuildingYouNeed_Ebook.pdf.

[21] Kastle, *Brochure* (2025), https://www.kastle.com/wp-content/uploads/2025/05/Kastle-Brochure_2025.pdf.

Van Till and Dan Greene as inventors. Brivo is the owner by assignment of all right, title, and interest in and to the ’680 Patent, including the right to sue for and recover damages for past, present, and future infringement. The ’680 Patent is valid and enforceable. A true and correct copy of the ’680 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

34. The ’680 Patent issued from U.S. Patent Application No. 17/589,898, filed February 1, 2022, which is a continuation-in-part of U.S. Patent Application No. 17/542,362, filed December 4, 2021, and of U.S. Patent Application No. 16/442,629, filed June 17, 2019 (now U.S. Patent No. 11,222,492). *See generally* Ex. 1 (’680 Patent).

35. The ’680 Patent relates to “physical access control and video surveillance security services.” *Id.* at 1:18-19.

36. The ’680 Patent discusses the shortcomings of conventional physical access control systems at the time of the invention and discloses a novel improvement to physical access control and video surveillance computer systems.

37. Physical access control systems issue credentials that must be presented at a reader before a person may pass through an access point. A credential reader alone could confirm that a valid credential had been presented but not that the person presenting it was the person to whom it was issued, because the reader captures data from the credential rather than from the person carrying it. The ’680 Patent describes a system for “ match[ing] badge photos based on the credential with a best face of video frame images taken in current time.” *Id.* at 2:59-63.

38. Associating surveillance video with credential events also presented technical difficulties. As the ’680 Patent explains, “[b]ecause the submission of an electronic credential may involve holding a device in the vicinity of a reading device, a video surveillance camera may not capture the best quality face at that instant,” and “[t]he highest score for confidence level of

finding a face may be in a frame captured earlier or later than the timestamp of credential submission." *Id.* at 4:43-48.

39. Moreover, a valid credential is only one input to a sound access decision. Whether a person should be admitted can depend on who the person is, which access point the person seeks to pass through, and when. *See id.* at 5:53-63; 6:4-7. And a system that identifies people from video must compare the faces it captures against stored reference images, such as badge photographs, so the accuracy of its identifications depends on those references. *See id.* at 6:22-36; 6:42-48; 7:3-16.

40. The '680 Patent identifies further technical problems that arise at the access point itself. When several people approach an access point together, multiple credentials may be read, and multiple faces captured, within the same area and time range, and the system must associate the credentials it reads with the faces it captures. *See id.* at 4:20-39 (describing "matching many credentials to many faces"). Systems that admit people one credential at a time also slow transit through the access point when a group arrives together. *See id.* at 1:19-22 ("What is needed is speedier physical transit when groups of mutually known individuals arrive at an access point of a private area . . . ."). Each of these problems, like those described above, arises from the technology of electronic access control and video surveillance itself, including where sensors and cameras are positioned, when separate devices capture their data, and the quality of the stored reference data against which captured images are compared. None is a problem of security staffing, and none is solved by having a person do the same work.

41. To address these technical problems, the '680 Patent discloses "a system to control physical access through an ACCESS POINT" that combines credential data and video to identify the person at the access point and evaluates that person against an access policy. *Id.* at 6:37-51;

5:44-6:21. In this system, an identification module "receives video streams and data from an ANTE-CAM" and "a CREDENTIAL SENSOR," "both positioned in the vicinity before the ACCESS POINT." *Id*. at 6:39-42. An ante-cam is "[a] camera positioned to capture video frames of persons near the credential scanning device exterior to the access point." *Id*. at 6:32-34. Using an identity data store that associates each authorized person's credential, identity indicia, and badge photo, the identification module determines "a recommendation with confidence percentage when the person at the ACCESS POINT is to be allowed to enter." *Id*. at 6:42-48.

42. More specifically, the identification module receives an electronic credential from the credential sensor and video frames from the ante-cam, retrieves identity indicia from the identity data store, determines "a highly likely identity of a person present at an Access Point," and transmits "WhoWhenWhere indicia" to an admittance module. *Id*. at 5:47-54. "Where" refers to "a particular access point," "When" to the "time of day and day of pay period of the requested access at that particular access point," and "Who" to "the identity (if determined or indeterminant) of the requestor of access." *Id*. at 5:54-60.

43. The admittance module retrieves an access policy from a store, determines whether the person at the access point is authorized to pass, and transmits "an access control recommendation" to a security surveillance operator console. *Id*. at 5:64-6:3. The '680 Patent defines an access policy as "whether the requestor's identity includes a role or responsibility suitable to transit at that time of day for the area controlled by the access point." *Id*. at 6:4-7; *see also id*. at 6:60-67 (access policy "applies Who, When, Where rules").

44. At the security surveillance operator console, the selected frame and identity indicia for the person at the access point are received, a "Best Look" selected from the ante-cam's video ("a frame having the highest confidence of containing a face") is viewed, and the admittance

module's recommendation is accepted or overridden. *Id.* at 6:8-14; 6:19-21. The console then initiates "at least one of portal actuator command, alert, alarm, procedure." *Id.* at 6:15-16; *see also id*. at 6:48-51. The portal actuator controls transit through the access point, for example by "opening or closing" or "locking and unlocking" the portal. *Id.* at 5:39-43. The operator console may also set a confidence threshold above which a face is accepted passively, requiring "active acceptance for confidence percentages below said threshold." *Id.* at 6:56-59.

45. The '680 Patent also discloses a second camera, a "POST-CAM," which is "[a] camera positioned to capture video frames of persons who have passed through an access point." *Id.* at 6:34-36. The system further includes a training module coupled to the identity data store and the security surveillance operator console. *Id.* at 8:13-19. The '680 Patent describes a variety of functions the training module may perform, including, for example, training a model "for classifying faces in video frames with regard to the identity data store," upgrading a machine learning model, adding auxiliary photos to the identity data store, and categorizing faces in a training database. *Id.* at 6:22-32; 7:3-17. It likewise describes various data the training module may use, such as video frames from the ante-cam or post-cam and decisions made at the operator console. *See id.* at 6:16-32; 7:3-11. Claim 4 couples the training module to the identity data store used by the identification module and to the operator console that is coupled to the first camera and identification module. The disclosed training implementations illustrate how this arrangement may support developing and updating the reference images or classification models used for computerized identification within the apparatus. *See id.* at 6:22–32; 7:3–17; 19:8–20:13.

46. The '680 Patent describes these components working together as an integrated system that includes "an admittance module coupled to an access policy store; coupled to the identification module and to the security surveillance operator console; a training module coupled

to the identity data store and to the security surveillance operator console; and a post-cam coupled to the security surveillance operator console." *Id*. at 8:13-19; *see also id*. at 8:8-12.

47. The '680 Patent further discloses applying these identification techniques to groups. For example, in some embodiments, when a group of individuals whose faces are each found in the identity store arrives at an access point together, the system can treat the group as a "cohort" and admit it on a single valid credential, which "speeds access when a group known to one another arrives at an access point because fewer badge reads are required to enter." *Id*. at 1:27-30; *see also id*. at 1:32-2:5.

48. The invention of the '680 Patent thus improves the functionality of physical access control computer systems. For example, the claimed system links credential events at an access point with video of the person requesting access; transmits the identity of that person, the access point, and the time of day to an admittance module that applies an access policy; provides a security surveillance operator console through which it reviews video of, and identity information about, that person; captures video of persons after they pass through the access point; and includes a training module coupled to the identity data store and the operator console. *See id*. at 4:12-5:12; 5:44-6:59; 8:13-19; 19:8-20:13.

49. More particularly, the claims recite combinations of elements that achieve these improvements. For example, claim 4 recites an apparatus comprising a credential sensor positioned in the vicinity of an access point; a first camera positioned to capture video frames of persons near the credential sensor, including the person requesting access; an identification module coupled to the first camera and the credential sensor, which retrieves identity indicia of the person requesting access from an identity data store; an access policy store; an admittance module coupled to the access policy store, to which the identification module transmits "an access

point, a time of day and the identity of the person requesting access"; a security surveillance operator console coupled to the first camera and the identification module; a portal actuator; a second camera positioned to capture video frames of persons "who have passed through the access point"; and a training module coupled to the identity data store and the operator console. *Id.* at 19:8-20:13 (claim 4). Claims 5 and 6 further specify the portals that the portal actuator controls and the position of the first camera. *Id.* at 20:14-22 (claims 5-6).

50. The claims of the '680 Patent recite one or more inventive concepts rooted in computerized technology and overcome technical problems in that field. *See, e.g.*, *supra* ¶¶ 36-49. A person of ordinary skill in the art reading the '680 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems stemming from physical access control systems that relied on credential verification or video surveillance and provide for advancements in the field that were not routine, well-understood or conventional. *Id.* The claims are not directed to automating tasks previously performed by security personnel. They recite a specific apparatus in which particular hardware components, including a credential sensor positioned in the vicinity of an access point, a first camera positioned to capture persons near the credential sensor, a second camera positioned to capture persons who have passed through the access point, and a portal actuator, are coupled in a defined arrangement to identification, admittance, and training modules, to identity and access policy data stores, and to an operator console. Accordingly, each claim of the '680 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the combination of claim elements is inventive. Further, the claimed improvements over prior art physical access

control systems are concrete and improve the capabilities of existing physical access control computer systems.

51. A person of ordinary skill in the art reviewing the specification of the ’680 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

## GENERAL ALLEGATIONS RELATED TO INFRINGEMENT

52. Kastle has infringed and continues to directly and indirectly infringe at least one claim of the Asserted Patent by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not limited to one or more of making, using, selling, offering for sale, and importing the Accused Products, and inducing and contributing to infringement by others, in this District and elsewhere in the United States.

53. Kastle directly infringes through its own installation and operation of the Accused Products. Kastle describes itself as “the only end-to-end managed physical security provider” and states that it “design[s], install[s], monitor[s], maintain[s], and support[s]” its solutions.[22] On information and belief, Kastle installs, assembles, configures, and operates the Accused Products at customer sites in the United States, including the credential readers, portal cameras, recorders, video analytics, and operator consoles that make up the Accused Products, and Kastle personnel review access events and associated video through those systems, including through Kastle’s Video Operations Center.

54. Kastle directly competes with Brivo in the physical access control and video surveillance industry by offering products that use Brivo’s patented technology. As a result of Kastle’s infringement, Brivo has suffered and will continue to suffer damages, including lost

[22] Kastle, *About*, https://www.kastle.com/about/ (last visited Oct. 27, 2026).

profits, and in no event less than a reasonable royalty. Brivo seeks damages for Kastle's infringing acts beginning on the date the Asserted Patent issued.

55. Brivo also seeks an injunction prohibiting further acts of infringement. Each of Kastle's acts of infringement has caused and will continue to cause Brivo irreparable harm for which there is no adequate remedy at law. Such injunctive relief would not disserve the public interest and is warranted when considering the balance of equities.

56. Kastle has had knowledge of the Asserted Patent and of its infringement since at least the filing and service of this Complaint. On information and belief, Kastle also knew of the Asserted Patent, or was willfully blind to its existence, before that date, because Kastle is a direct competitor of Brivo in the physical access control and video surveillance industry and is in active litigation against Brivo. *Kastle Sys. Int'l LLC v. Brivo, Inc.*, No. 26-BC03A-0039 (Tex. Bus. Ct. filed Oct. 7, 2026) (removed from 26th Jud. Dist. Ct., Williamson Cnty., Tex., No. 26-2094-C26, filed July 14, 2026).

57. On information and belief, Kastle's infringement of the Asserted Patent has been, and continues to be, willful because Kastle has committed and continues to commit acts of infringement with knowledge of the Asserted Patent and of its infringement, and without any reasonable basis to believe that it does not infringe.

58. Kastle's infringement of the Asserted Patent has been, and continues to be, without permission, consent, authorization, or license.

## COUNT I: PATENT INFRINGEMENT OF THE '680 PATENT

59. Brivo incorporates by reference the preceding paragraphs as though fully set forth herein.

60. Kastle infringes, contributes to the infringement of, and/or induces infringement of the ’680 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the ’680 Patent.

61. Kastle directly infringes, literally and/or under the doctrine of equivalents, at least claim 4 of the ’680 Patent by making, using, selling, and offering for sale in this District and elsewhere in the United States the claimed apparatus, including Kastle Access integrated with KastleVideo, credential readers and controllers, portal cameras and actuators, identity records, facial recognition enrollment and template management, associated cloud AI training and model-update functionality, and the security operator console. On information and belief, Kastle makes the Accused Products by designing, assembling, and installing their components at customer sites, and uses them by operating, maintaining, and monitoring them as a managed service.

62. For example, claim 4 of the ’680 Patent recites:

4. An apparatus comprising:

a credential sensor positioned in a vicinity of an access point, the credential sensor configured to capture information of a person requesting access;

a first camera positioned to capture video frames of one or more persons near the credential sensor, the one or more persons near the credential sensor including the person requesting access;

an identification module coupled to the first camera and the credential sensor;

an identity data store, wherein the identification module is configured to retrieve identity indicia of the person requesting access from the identity data store;

an access policy store storing an access policy for a person requesting access;

an admittance module coupled to the access policy store, wherein the identification module is configured to transmit information including an access point, a time of day and the identity of the person requesting access to the admittance module;

a security surveillance operator console coupled to the first camera and the identification module;

a portal actuator;

a second camera positioned to capture video frames of the one or more persons who have passed through the access point; and

a training module coupled to the identity data store and the security surveillance operator console.

Ex. 1 ('680 Patent) at claim 4.

63. As set forth in the claim chart attached as Exhibit 2 and incorporated herein by reference, the Accused Products include each limitation of claim 4. For example, on information and belief, the Accused Products include Kastle credential readers, such as the KR210-WMAE reader, mounted at controlled access points to capture the credentials of persons requesting access; cameras placed at those readers to capture the persons requesting access; credential-identification and event-processing software that associates video with the credential number, credential holder, and access time; and personnel, credential-holder, and enrolled-identity records from which the requester's identity is retrieved. *See* Ex. 2 ('680 infringement chart) at limitations 4.Pre–4.D. They further include stored access privileges and schedules; controller and access-authorization software that receives the access point, time of day, and identity of the requester; the myKastle and KastleVideo operator interface; electrically controlled door locks; interior cameras that capture persons after they pass through the access point; and cloud AI training and model-update

functionality coupled to Kastle's enrolled facial templates and the operator interface. *See id.* at limitations 4.E–4.J.

64. Kastle also indirectly infringes at least claim 4 of the '680 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Kastle's customers and end users, in this District and elsewhere in the United States. For example, on information and belief, Kastle's customers and end users directly infringe by using the Accused Products to control access to their facilities. Kastle induces this direct infringement through its affirmative acts of installing, configuring, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product sheets, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner. As a result of Kastle's inducement, Kastle's customers and end users use the Accused Products in the way Kastle intends and directly infringe the '680 Patent. Kastle has performed and continues to perform these affirmative acts with knowledge of the '680 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '680 Patent.

65. Brivo has been damaged by Kastle's infringement of the '680 Patent and is entitled to recover damages adequate to compensate for that infringement, but in no event less than a reasonable royalty, under 35 U.S.C. § 284.

## **PRAYER FOR RELIEF**

WHEREFORE, Brivo respectfully requests that this Court enter judgment in its favor as follows and award Brivo the following relief:

(a) a judgment that Kastle has infringed, directly and indirectly, one or more claims of the Asserted Patent;

(b) an award of damages adequate to compensate Brivo for infringement of the Asserted Patent by Kastle, in an amount to be proven at trial, including supplemental post-verdict damages until such time as Kastle ceases its infringing conduct;

(c) a permanent injunction prohibiting Kastle and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all affiliated entities, and all other persons in active concert or participation with any of them, from committing further acts of infringement;

(d) in the alternative, should the Court decline to enter a permanent injunction, an award of an ongoing royalty for Kastle's continued infringement after judgment;

(e) a finding that Kastle's infringement has been willful and an award of enhanced damages up to three times the amount found or assessed under 35 U.S.C. § 284;

(f) a declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Brivo's reasonable attorneys' fees and the costs of this action;

(g) pre-judgment and post-judgment interest at the maximum amount permitted by law; and

(h) all other relief, in law or equity, to which Brivo is entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: November 13, 2026.

/s/ Craig C. Reilly

Craig C. Reilly
Virginia State Bar No. 20942
craig.reilly@ccreillylaw.com
**LAW OFFICE OF CRAIG C. REILLY**
429 North Saint Asaph Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355

R. Mitch Verboncoeur (*pro hac* forthcoming)
Texas State Bar No. 24105732
mverboncoeur@McKoolSmith.com
George Fishback (*pro hac* forthcoming)
Texas State Bar No. 24126000
gfishback@McKoolSmith.com
Rania Khamees (*pro hac* forthcoming)
Texas State Bar No. 24149673
rkhamees@McKoolSmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Bradley Jarrett (*pro hac* forthcoming)
Texas State Bar No. 24128518
bjarrett@McKoolSmith.com
Gabriel DeJong (*pro hac* forthcoming)
Texas State Bar No. 24149182
gdejong@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF BRIVO, INC.**